ESTATE OF JOHN S. BURCKHARD, Deceased, EMMA L. BURCKHARD, Executrix, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Estate of Burckhard v. Commissioner
Docket No. 3026-82.
United States Tax Court
T.C. Memo 1984-389; 1984 Tax Ct. Memo LEXIS 275; 48 T.C.M. (CCH) 645; T.C.M. (RIA) 84389; July 30, 1984. *275 Held: Fair market value of 2,480 acre farm-ranch in Perkins County, South Dakota, owned by decedent at the time of his death, redetermined. Paul A. Frederiksen, for the petitioner. Cynthia J. Olson, for the respondent. DRENNEN
MEMORANDUM FINDINGS OF FACT AND OPINION DRENNEN, Judge: Respondent determined a deficiency in petitioner's estate tax in the amount of $79,329.98. After concessions made by petitioner, the only issue remaining for decision is the fair market value at the date of decedent's death of 2,480 acres of farm and ranch land in Perkins County, South Dakota, owned by decedent at the time of his death. Petitioner reported the value on the estate tax return to be $131,440. Respondent determined the value to be $334,800 in the notice of deficiency. FINDINGS *276 OF FACT The stipulated facts are incorporated herein by reference. John S. Burckhard (decedent), a resident of Perkins County, South Dakota, died testate on March 11, 1978. The Estate of John S. Burckhard, Mrs. Emma L. Burckhard, Executrix (petitioner) filed a U.S. estate tax return with the Internal Revenue Service Center in Ogden, Utah on December 4, 1978. At the date of his death, decedent owned outright 2,480 contiguous acres of real property in Perkins County, South Dakota, free and clear of all liens and encumbrances. The property was used as a cattle ranch with a portion devoted to the production of wheat, which was the highest and best use of the property. The decedent, his wife, and his son resided on the property. Situated on the property were farm and ranch buildings, including a residence, a barn and corral, four cattle sheds, five steel grain bins with a capacity of 4,100 bushels each, two large steel equipment sheds, and a bull shed. For the year 1978 the Perkins County Board of Equalization assessed the value of the property at $329,925. In 1980, during the course of the examination of the estate tax return, petitioner obtained the services of Wilbert *277 A Tubbs, a professional appraiser from the area, to determine the fair market value of the property at the date of decedent's death, and respondent obtained the services of Robert L. Dell, also a qualified and experienced real estate appraiser from the area, to perform the same function. Tubbs' appraisal report found the value of the property to be $167,500 ($67.54 per acre). Dell's appraisal report found the value of the property to be $334,800 ($135 per acre). The appraisers found that there had been four sales of ranch properties in Perkins County between December 29, 1977 and October 29, 1979, which were sufficiently similar to subject property in size, location, characteristics, and use to be considered "comparables" for use in determining the fair market value of decedent's property at the date of his death. Those sales were as follows: Sale #1 - Coe to Jerde, March 27, 1978, 2,452 acres, for $300,250 or $125 per acre. Sale #2 - Blade to Leuton, March 29, 1978, 1,160 acres, for $174,000 or $150 per acre. Sale #3 - Darling to Besler, December 29, 1977, two sales of contiguous property, one of 1,360 acres for $160,800, or $118.25 per acre, and one of 1,560 *278 acres for $178,800 or $114.50 per acre, a total of 2,920 acres for $339,600 or a composite of about $116.30 per acre. Sale #4 - Hibner to Shinagle, October 29, 1979, 8,957.44 acres for $465,000 or $157.25 per acre. [1]
The price of farm and ranch land in Perkins County, South Dakota was rather steady during 1978 and for several years prior thereto. It started going up in 1979 and 1980. OPINION The only issue remaining for decision is the value for estate tax purposes of a 2,480 acre farm and ranch in Perkins County, South Dakota, owned by decedent at the date of his death. That value is the fair market value of the property at the time of decedent's death. The fair market value is the price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or sell, and both having reasonable knowledge of relevant facts. Section 20.2031-1(b), Estate Tax Regs. The determination of fair market value poses a question of fact which must be based on all the relevant evidence and, under the circumstances here involved, on the Court's application *279 of judicial experience to those facts. We somewhat reluctantly undertake that task. [2]
The evidence of value offered at the trial consisted primarily of a stipulation of facts relating to the sales mentioned in our findings, the testimony of the two appraisers and their appraisal reports, and various maps and surveys showing the location and configuration of subject property and the "comparable" properties involved in the sales set out above. Petitioner's appraiser, Mr. Tubbs, was possible better qualified academically than defendant's appraiser, Mr. Dell, although Mr. Dell appeared to be thoroughly familiar with the subject and similar properties in the area. However, the Tubbs' appraisal report was signed by an associate and we cannot give more weight to Tubbs' testimony, as urged by petitioner, than to the testimony of Dell. Tubbs estimated the value of subject property by three different methods, the market data comparison, cost data analysis and income analysis. Dell relied entirely on the market data approach. *280 We do not find the cost data or income methods to be very appropriate for our purposes here because they are based on rather nebulous factors and furthermore we have evidence of the sales prices of three or four quite comparable properties within a permissible period of time. It seems to us, and we believe both appraisers agree with us, that when qualified comparable market data is available, the use of the market data method to estimate the value of similar property is the best method to use. See Walker v. Commissioner,T.C. Memo. 1975-303. Of course, adjustments may and should be made for differences in the comparable properties and subject property, and the circumstances surrounding the sale, that might have affected the selling price of the comparable properties. The difficult job is to determine whether those differences and circumstances actually affected the selling prices of the comparables and, if so, how much those selling prices should be supplemented or discounted because of such differences. Dell used only the market data method because he believed the four sales he relied on were so comparable in size, location, character, improvements, use, and *281 time of sale that the selling prices of those properties was the best evidence available of the value of subject property. He recognized there were some differences in the properties but not enough to have a real bearing on the prices for which the properties could be sold. He tried the income method but found the result to be so far out of line to be useless. He did not use the cost analysis method because he did not have access to the improvements on subject property. He also testified that he had not heard of and, did not know of, any comparable real estate in Perkins County selling for less than $100 per acre in 1978. He arrived at his appraisal value by dividing the price for which each of the four comparables sold by the number of acres sold to arrive at a price per acre sold, and then added the selling prices per acre in all farm sales and dividing by four, to arrive at an average price per acre for which the comparables sold. He then multiplied the number of acres in subject property by the average price per acre, or $135 per acre, to arrive at the $334,800 fair market value he placed on subject property. [3]
In his market *282 data approach to determining the value of subject property, Tubbs used only the first three sales listed in our findings of fact as comparables. He felt that sale #4 was too far removed in time from the date of death that, in a rising market, it would not be helpful. He then compared the quality and characteristics, and the circumstances of sale, of each of the three comparables to subject property and either discounted the sales price of the comparable for factors which he felt favored the comparable or enhanced the sales price of the comparable for factors which he felt favored subject property. Some of these factors were improvements, location with reference to better properties or other properties owned by the buyer, the portion of the properties that were usable as farm land rather than ranch land, the availability of water, and the terms of the sales of the comparables. He assigned either a percentage of the sales prices or a dollar amount to be deducted or added to the sales prices to arrive at what he found to be selling prices per acre of each of the comparables, all things being equal. This translated into a dollar value per acre for subject property, which was $67.50 per *283 acre, or a total value for the entire property of $167,500. We agree with Tubbs that some downward adjustment to the selling prices of the comparables should be made to determine the fair market value of subject property by use of the market data approach. However, we do not agree with the rather sizable discounts assigned to some of these factors by Tubbs, particularly when he gave us no explanation of how he arrived at the discount figures. Tubbs emphasized particularly the problem subject property had with noxious weeds, the fact that the comparables were being acquired by buyers who owned land contiguous to or near the comparables (add-on sales), and the fact that the purchases of the comparables were being financed on very favorable terms, which might cause the seller to ask more for the property and the buyer to pay more for the property than its fair market value. We do not doubt that noxious weeds were a problem for all farmer-ranchers in Perkins County but we are not convinced that these weeds were any more noxious or more extensive on subject property than they were on the comparables. While a buyer might be willing to pay more for property near or adjacent to property *284 he already owns than he would pay for other similar property, we have no evidence that this was actually a factor in fixing the selling prices of the comparables or, if so, how much of a factor. Furthermore, subject property was a rather large farm-ranch that was all one piece. And, while favorable financing of the purchase might induce a buyer to pay more for the property than he thought it was worth, here again we do not know whether this was an actual factor in arriving at the selling prices of any of these comparables, and if so, to what extent. Since petitioner raised these arguments he has the burden of proving that they actually entered into these transactions, in addition to his normal burden of proof. We have done our best to analyze the evidence presented to arrive at a just determination of the value of subject property on the date of decedent's death. We have given attention to the arguments of both parties. In our best judgment the fair market value of the 2,480 acre farm and ranch at the time of decedent's death was $115 per acre, or $285,200. [4]
*285 Decision will be entered under Rule 155.
Footnotes
1. Tubbs did not use Sale #4 as a comparable in his appraisal report.↩
2. This case was heard in Denver, Colo. The Court has never seen the subject property and has never been within several hundred miles, at least, of it.↩
3. At least the arithmetic works that way.↩
4. We are somewhat bothered by the fact that this value is less than the assessed value of the property for tax purposes in 1978, but we have no information regarding the assessment procedures in Perkins County, and neither party argues this point.↩